## HERREN v. FARM SECURITY ADMINISTRATION, DEPARTMENT OF AGRICULTURE.

### Civ. No. 263.

District Court, W. D. Arkansas, El Dorado Division.

May 12, 1945.

Duval L. Purkins, of Warren, Ark., for plaintiff.

Clinton R. Barry, U. S. Atty., and Hugh M. Bland, Asst. U. S. Atty., both of Fort Smith, Ark., for defendant.

MILLER, District Judge.

On January 1, 1940, the plaintiff, Gordie M. Herren, and Southwest Joint Stock Land Bank, as lessors, entered into an agreement with the Ashley Homestead Association, Inc., as lessee, and the United States of America, acting by and through the Secretary of Agriculture, and designated in the agreement as the Government, by the terms of which written agreement a certain farm owned by plaintiff was leased to the lessee for a period of five years, beginning January 1, 1940 and ending December 31, 1944. The United States of America was given an exclusive and irrevocable option to purchase the property at any time prior to December 31, 1941.

The lease agreement provided that the lessee would farm the property in accordance with requirements of good husbandry and at the termination of the lease would deliver the possession of the property in

the same condition as it was at the beginning of the period, except for customary use and wear.

In this action the plaintiff seeks to recover the sum of $10,000 and costs against the defendant, United States of America, upon the allegation that the lessee had violated and breached the terms of the lease and as a result of said breach and the negligence of the Farm Security Administration, its employees, servants and agents, the leased property had been damaged in the sum sought to be recovered.

It is also alleged in the complaint that the Ashley Homestead Association, Inc., is a mere device of the Farm Security Administration and that in truth and in fact the Farm Security Administration supervised, controlled and operated the farm, although the lessee named in the agreement was Ashley Homestead Association, Inc.

The defendant, United States of America, has filed a motion to dismiss the complaint and for summary judgment upon the ground that the complaint shows upon its face that the court lacks jurisdiction for the following reasons. (1) The United States of America is not suable, (2) plaintiff's claim is an action sounding in tort and does not come within the provisions of the Tucker Act, subdivision 20 of Section 41 of Title 28 U.S.C.A.

The attorneys for plaintiff and defendant have filed most excellent briefs in support of their respective contentions, which briefs have been carefully considered by the court, and the questions raised by the motion will be considered in the order as therein set forth.

The plaintiff on her brief states: "This is a suit against the United States. The action comes within the waiver of governmental immunity under the terms of the Tucker Act. The assertion of plaintiff's claim is a privilege conferred by the Court of Claims Act, and, its amendment, the Tucker Act, creating concurrent jurisdiction in this court."

In the case of United States v. Sherwood, 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058, the court in discussing the effect of the amendment of the Court of Claims Act by the Tucker Act, said: "Construing the statutory language with that conservatism which is appropriate in the case of a wavier of sovereign immunity and in the light of the history of the Court of Claims' jurisdiction to which we have referred, we think that the Tucker Act did no more than authorize the District Court to sit as a court of claims and that the authority thus given to adjudicate claims against the United States does not extend to any suit which could not be maintained in the Court of Claims."

In the same case at page 586 of 312 U.S., at page 769 of 61 S.Ct., 85 L.Ed. 1058, the court said: "The United States, as sovereign, is immune from suit save as it consents to be sued, United States v. Thompson, 98 U.S. 486, 25 L.Ed. 194; United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171; Kansas v. United States, 204 U.S. 331, 27 S.Ct. 388, 51 L.Ed. 510; Minnesota v. United States, 305 U.S. 382, 387, 59 S.Ct. 292, 294, 83 L.Ed. 235; Keifer & Keifer v. Reconstruction Finance Corporation, 306 U.S. 381, 388, 59 S.Ct. 516, 517, 83 L.Ed. 784; United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888. See cases cited in The Pesaro, D.C., 277 F. 473, 474, et seq., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."

In the case of United States v. United States Fidelity Co., 309 U.S. 506, 514, 60 S.Ct. 653, 84 L.Ed. 894, the court said: "Consent alone gives jurisdiction to adjudge against a sovereign. Absent that consent, the attempted exercise of judicial power is void. The failure of officials to seek review cannot give force to this exercise of judicial power. Public policy forbids the suit unless consent is given, as clearly as public policy makes jurisdiction exclusive by declaration of the legislative body."

The court does not have the right nor the power to extend the waiver of sovereign immunity more broadly than has been directed by the Congress, the policy making branch of the Government. United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888.

In Section 1853 of Volume 3, Hughes' Federal Procedure, it is said: "The United States cannot be sued without its consent. Therefore the Government, through Congress, may prescribe the conditions on which it may be subjected to litigation. And a party who institutes such a suit must bring the same within the authority of some Act of Congress in order to come within the court's jurisdiction."

Under the statute, subdivision 20 of Section 41, Title 28 U.S.C.A., United States District Courts have the same jur-

isdiction as that of the Court of Claims, limited only in respect to the sum involved. The Court of Claims alone had jurisdiction to render money judgments against the sovereign until concurrent jurisdiction was given to the Circuit Courts of the United States in 1887 and subsequently to the District Courts by the statute above referred to. The purpose of this statute was to fix the venue and to permit citizens to prosecute their claims against the Government in the districts of their residence rather than compel them to prosecute their suits in the Court of Claims sitting in the National Capitol.

The plaintiff, in effect, contends that the statute (supra) by its terms grants consent for the prosecution of her suit, but as above shown, the statute only confers jurisdiction upon the court "of all claims not exceeding $10,000 founded upon the Constitution of the United States or any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable, * * *."

The plaintiff has not called the court's attention to any statute in which the consent of the sovereign to be sued on a transaction such as is involved herein has been granted, but very earnestly contends that under the holding in the case of Keifer & Keifer v. Reconstruction Finance Corporation, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784, that the United States is suable because of the acts of the Farm Security Administration. At page 397 of 306 U.S., at page 522 of 59 S.Ct., 83 L.Ed. 784, the court said: "Congress has thus clearly manifested an attitude which serves as a guide to the scope of liability implicit in the general authority it has conferred on governmental corporations to sue and be sued. We should be denying the recent trend of Congressional policy to relieve Regional from liability. This compels us to reverse the judgment of the court below."

The Regional Agricultural Credit Corporation involved in the Keifer case was chartered by the Reconstruction Finance Corporation, and the Congress gave the Reconstruction Finance Corporation various general corporate powers, including authority "to sue and be sued, to complain and to defend, in any court of competent jurisdiction, State or Federal," 47 Stat. 5, 6, 15 U.S.C.A. § 604, and since the parent corporation had the right to sue and be sued, it is reasonable to assume that the same rights and liabilities were extended to the Regional Agricultural Credit Corporation, and especially is this true when the purpose of the creation of the latter is considered. It was intended to carry on a part of the work of the Reconstruction Finance Corporation and other closely allied governmental corporations.

█ The Farm Security Administration is not a governmental corporation. The plaintiff on her brief has designated it as "an administrative agency of the United States", and it was created as a relief agency to aid in the rehabilitation of distressed farmers.

Section 4 of the Emergency Relief Appropriation Act of 1935, 49 Stat. 115, 15 U.S. C.A. §§ 721–728, gave the President of the United States authority to establish and prescribe the duties and functions of necessary agencies within the Government for the purpose of administering the various programs of relief. Prior to that time relief to distressed farmers was being administered by the Resettlement Administration. On December 31, 1936, the President issued an executive order (No. 7530, 40 U.S. C.A. §§ 431–434 notes) transferring all the powers, functions and duties vested in the Resettlement Administration by Executive Order No. 7027 of April 30, 1935, to the Secretary of Agriculture, "to be exercised and performed by him; and all funds, personnel, property, records, and equipment of the Resettlement Administration are hereby transferred to the Department of Agriculture, to be under the supervision, control, and direction of the Secretary of Agriculture."

Effective September 1, 1937, the Resettlement Administration was changed to Farm Security Administration and the Administrator of Farm Security Administration was directed to perform the functions of the Secretary of Agriculture under Titles 1 and 2 and the related sections of Title 4 of the Bankhead-Jones Farm Tenant Act, 7 U.S.C.A. §§ 1000–1009, 1014–1029. Title 6, Sections 301.1 to 301.6 of the Code of Federal Regulations.

An examination of the various appropriation acts of the Congress, appropriating

money to be expended by the Farm Security Administration, fails to disclose consent on the part of the Government for the prosecution of any suit of any kind against the Government by reason of the actions of the officials of the Farm Security Administration, and since the Farm Security Administration is an executive agency and not a governmental corporation, consent to be sued cannot be implied.

Therefore, the court is without jurisdiction to entertain this suit.

This makes it unnecessary to consider the contention of the defendant, United States of America, that the plaintiff's claim is an action sounding in tort, but it is apparent to the court that the alleged action of the plaintiff arises out of contract and is not an action sounding in tort.

For the reasons above stated the motion of the defendant, United States of America, to dismiss is sustained and a judgment is being entered today dismissing the complaint of the plaintiff.